UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: <br><br> GORDON PROPERTIES, LLC, <br><br> Debtor. | Case No. 09-18086-RGM <br> (Chapter 11) |
| HOWARD SOBEL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BRYAN SELLS, et al., <br><br> Defendants. | Adv. Proc. No. 12-1562-RGM |

## MEMORANDUM OPINION

First Owners Association of Forty Six Hundred Condominium, Inc., ("FOA"), one of the defendants in this adversary proceeding, asks that Reed Smith LLP, counsel for the plaintiffs, be disqualified because Reed Smith previously represented it in substantially related matters. Va. Rules of Professional Conduct Rule 1.9(a).[1]

FOA has been in litigation with Gordon Properties, LLC and its related entities and individuals for more than four years. There have been at least seven law suits, two bankruptcies, an arbitration and numerous appeals, all of which, according to statements of counsel in various

---

[1] Rule 1.9(a), Conflicts of Interest: Former Client, states:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless both the present and former client consent after consultation.

1

hearings, have cost FOA more than a million dollars in attorneys fees. FOA and Gordon Properties recently reached a global settlement which is scheduled for a hearing before this court for approval. FOA was represented in all of the litigation by Reed Smith until relatively recently when a newly elected Board of Directors discharged Reed Smith and, through its Special Litigation Committee, retained new counsel.[2]

Before the ink was dry on the global settlement – before it was even finalized and reduced to writing – eleven unit owners (several of whom previously sat on the Board of Directors and two of whom previously sat on the Special Litigation Committee) filed this suit against FOA and three of its directors (all three of whom are affiliated with Gordon Properties) in the Circuit Court for the City of Alexandria. The suit sought to have the Circuit Court declare that the three Gordon Properties-affiliated directors were invalidly elected; that a change in the membership of the Special Litigation Committee was invalid; that the prior Special Litigation Committee be reinstated; that the Board of Director's action in temporarily hiring Condominium Services, Inc. ("CSI"), a subsidiary of Gordon Properties, was invalid; and that the three Gordon Properties-affiliated directors may not participate in any Board action involving Gordon Properties. It further sought to have the three Gordon Properties-affiliated directors "temporarily and/or permanently enjoined from voting or taking any action on any matters that involve any settlement of the claims arising out of or relating to Gordon Properties, CSI or Gordon Residential." Complaint for Declaratory Judgment and Injunctive Relief at 20. Lindsay Wilson, one of the individual defendants, removed the case to this

---

[2] Reed Smith states that it is taking this case on a pro bono basis because the eleven unit owners cannot afford to hire counsel. The Rules of Professional Conduct apply to all attorneys in all cases, whether the representation is pro bono or for compensation. Pro bono work is encouraged and commended, but the rules with respect to confidentiality and conflicts with former clients remain the same.

court under 28 U.S.C. §1452. The plaintiffs are represented by Reed Smith. FOA, a defendant, seeks to disqualify Reed Smith from participating in this case.

### **Rules of Professional Conduct**

There are two competing principles. On the one hand, a party should have the right to retain counsel of his choice. On the other hand, a party has the right to have his confidences preserved by his counsel both during and after the representation. *Chantilly Const. Corp. v. John Driggs Co.,* 39 B.R. 466, 468 (Bankr.E.D.Va. 1984) (Bostetter, C.J.). A client is entitled to his lawyer's considered advice. In order to give full and fair advice, a lawyer needs his client to fully and freely discuss the matter with him and to give him all the information that the client possesses, even unfavorable or unflattering information.[3] Without complete information, a lawyer cannot fully and properly evaluate a client's situation and offer competent advice. A client will be reluctant to fully discuss his case with his lawyer if he thinks that the information may be divulged to others or used against him later. Rules 1.6(a) and 1.9(c) of the Virginia Rules of Professional Conduct govern a lawyer's use of clients' confidential information.[4]

---

[3]Comment 2b to Rule 1.6 states, "The client is . . . encouraged to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter."

[4]Rule 1.6(a), Confidentiality of Information, states:

A lawyer shall not reveal information protected by the attorney-client privilege under applicable law or other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b) and (c).

Rule 1.9(c), Conflicts of Interest: Former Client, states:

A lawyer who has formerly represented a client in a matter . . . shall not thereafter:

3

There are three types of confidential information: privileged communications; secret information; and information relating to or gained by the lawyer in the course of his representation of his client. Privileged communications are those communications that are subject to the well-known attorney-client privilege. A client secret is "information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client, whatever its source." Rule 1.6, Comment 3.[5] All other information obtained by a lawyer in the course of representing a client is case-related information. A lawyer may not disclose privileged or secret information and may not use case-related information to the disadvantage of his client unless it has become "generally known."[6] Rule 1.9(c)(1).

The confidentiality rules are common-sense rules. They assure that a client – whether an individual, a corporation or a condominium unit owner's association – can confide in his lawyer

---

(1) use information relating to or gained in the course of the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

[5] *See* Virginia State Bar Legal Ethics Opinions 1347 ("[I]nformation which may be public or known to third parties may be construed as a 'secret' if the client has specifically requested that it be held inviolate or if the attorney should know that disclosure would be embarrassing or would be likely to be detrimental to the client."). *See also* VSB LEO 1349.

[6] "Generally known" does not mean information that someone can find. It means information that is already generally known. For example, a lawyer may have drafted a property settlement agreement in a divorce case and it may in a case file in the courthouse where anyone could go, find it and read it. It is not "generally known." In some divorce cases, the property settlement agreement may become generally known, for example, in a case involving a celebrity, because the terms appear on the front page of the tabloids. "Generally known" does not require publication on the front page of a tabloid, but it is more than merely sitting in a file in the courthouse. *See* Virginia State Bar Legal Ethics Opinion 1609 (information regarding a judgment obtained by a law firm on behalf of a client, "even though available in the public record, is a secret, learned within the attorney-client relationship.")

without fear that his lawyer will divulge that information to others or use it to the client's disadvantage.

The confidentiality rules lead directly to limitations on a lawyer's ability to represent a new client in matters involving a former client. When confidentiality conflicts with the right to choose counsel, confidentiality prevails. *Tessier v. Plastic Surgery Specialists, Inc.,* 731 F.Supp. 724, 729 (E.D.Va. 1990) ("the right . . . to retain counsel of his choosing is 'secondary in importance to the Court's duty to maintain the highest ethical standards of professional conduct to insure and preserve trust in the integrity of the bar.'"). The confidentiality rules protect both the former client from the obvious threats of divulging confidential information or using it to the former client's disadvantage, and the new client from the lawyer's inability or hesitancy to develop favorable information because of the lawyer's duty to protect the former client's confidential information. *Id.* at 728.

"[O]nce an attorney-client relationship has been established, an irrebuttable presumption arises that confidential information was conveyed to the attorney in the prior matter." *Tessier,* 731 F.Supp. at 734, citing *Chantilly*. This does not mean that a lawyer is forever barred from representing a new client against a former client. Rule 1.9(a) addresses this. A lawyer may represent a new client against a former client, but not "in the same or a substantially related matter" in which the lawyer represented a prior client. Rule 1.9. The determination of whether a new matter is substantially related to the prior matter is not always easily resolved as is illustrated by *Tessier*.[7] In

---

[7]*Stokes v. Firestone (In re Stokes),* 156 B.R. 181 (Bankr.E.D.Va. 1993) provides an example of multiple representations that were not substantially related. In that case, the parties entered into a property settlement agreement in a divorce case that provided for the disposition of a parcel of real property, call it Blackacre. During the ensuing 18 years, both former spouses were represented by the same law firm in various discrete non-divorce related matters. One was an unsuccessful effort to develop Blackacre. Eighteen years after the divorce, Blackacre had not been disposed of as provided in the property settlement agreement. The former husband, represented by the law firm that represented each of them in the various matters and in the unsuccessful development effort, sued his former wife to enforce the property settlement agreement as to Blackacre. To resolve the issue, the court examined both the prior and the current

resolving the representational issues, *Tessier* examined the prior and the present representations of the law firm. The court paid particular attention to the issues involved, the relation of the issues in the two cases, the facts in both cases, the time frames covered in each case, the causes of action, the legal theories and the parties involved. *Id.* at 730 - 731. It was not necessary for each factor to be identical in both cases for the two cases to be substantially related. *Id.* at 730. For example, with regard to legal theories, it stated:

> While the legal theories employed in both cases are substantially different, the cases do arise from substantially similar facts. Confidential information conveyed in one case does not lose its confidential character because it was not utilized to develop a legal theory in a subsequent case. The information remains protected whether it is so used or not.

*Id.* at 731. The factors considered in *Tessier* provide a good, nonexclusive list of factors helpful in determining whether two matters are substantially related.

## Parties

*Tessier* looked at the parties to the prior and new litigation. The parties in these two cases are substantially the same.[8] FOA, the former client now being sued by Reed Smith, is a party to all

---

representations. It concluded that none of the matters that the law firm undertook for either of the parties related to the property settlement agreement. While the unsuccessful development effort concerned Blackacre, the issues in that representation were entirely different from and had no relationship to the issues involved in enforcing the property settlement agreement. The court concluded that the matters were not "substantially related" and that the law firm could represent the former husband against the former wife, both of whom had been clients of the law firm.

[8]Reed Smith identifies the eleven plaintiffs in its complaint. Complaint at ¶¶1 -11. The records of this court show that at least four are former members of FOA's Board of Directors. Dewanda F. Cuadros was the president at least during the bankruptcy period, from October 2009 through the October 2011election. She unsuccessfully ran for re-election in 2011. F.J. Pepper, Abdon Alexandre Zoghaib and Elizabeth Moore were elected to the Board of Directors in October 2011. The record does not show whether they ran for re-election at the October 2012 annual meeting, however, they are not on the current Board of Directors. Mr. Zoghaib and Betty Gilliam were both members of the first Special Litigation Committee. Complaint at ¶47. They were replaced with two newly elected members of the Board of Directors in October 2012 shortly after the annual meeting. Complaint at ¶49.

the suits. At least four of Reed Smith's new clients were members of the Board of Directors when Reed Smith represented FOA in these matters. Two of the new clients were members of the Special Litigation Committee. None are on the Board or the Committee now. Reed Smith represented FOA when the plaintiffs were officers and directors of FOA and members of the Special Litigation Committee and now represent them against FOA when they are no longer officers and directors of FOA or members of the Special Litigation Committee.

### Reed Smith's Prior Representation of FOA

Reed Smith previously represented FOA in two disputes: the termination of CSI and the additional assessment of Gordon Properties' restaurant condominium unit. In addition to representing FOA in the two disputes, Reed Smith was also general counsel to FOA. As general condominium counsel, it assisted Ms. Sarvadi of LeClair Ryan in the second injunction suit that resulted in the court-supervised 2011 election.

Reed Smith describes its prior representations of FOA in the first portion of the complaint it filed in this case against FOA. Complaint for Declaratory Judgment and Injunctive Relief at ¶¶ 1-62. The complaint describes the two key disputes between Gordon Properties, CSI and FOA in the section titled "Nature of Dispute Between FOA, Gordon Properties and CSI." Complaint at ¶¶20-30. In the first dispute, the termination of CSI by the Board of Directors as management agent for FOA, CSI asserted that only the unit owners association – not the Board of Directors – had the authority to terminate it. CSI resorted to self-help by continuing to collect condominium fees rather

---

Reed Smith also identifies the four defendants in its complaint. FOA is one of the four defendants. The other three are three of the four members of Gordon Properties, LLC. They were elected to the Board of Directors for two-year terms in October 2011. Complaint at ¶¶13, 17-19, 43-44.

7

than suing for damages for breach of contract. FOA ultimately sued CSI and recovered a judgment in the amount of $161,792 in compensatory damages and $275,000 in punitive damages.

The second dispute was over condominium fees assessed by the Board of Directors against Gordon Properties for its street-front condominium unit. The condominium consists of a high-rise building, a gas station and a restaurant. The gas station and the restaurant are physically separate from the high-rise. Each is a separate condominium unit and are called the street-front units. Gordon Properties owns the street-front condominium unit presently used as a restaurant. The condominium documents divide responsibility for expenses between the high-rise units and the street-front units. After about thirty years of operations, the Board of Directors determined that FOA had been underassessing Gordon Properties' street-front unit. The Board issued a supplemental assessment of about $250,000 which covered the preceding five years. Litigation ensued. Gordon Properties sought, among other things, a determination of the proper allocation for assessments generally and for contribution to and expenditures from reserves. FOA sought to collect the supplemental assessment. The Circuit Court determined the method for the allocation of reserves. It denied FOA's claim for the supplemental assessment on the ground that it had not been assessed by the Board of Directors. The Board immediately made a new supplemental assessment for the preceding five years.

The representation became more involved and complicated when Gordon Properties filed bankruptcy on October 2, 2009.[9] FOA's bylaws prohibit a unit owner who is in arrears in the payment of condominium fees for more than thirty days from voting at an annual meeting.[10] Gordon

---

[9]CSI filed bankruptcy on January 26, 2010.

[10]Gordon Properties was in arrears because it did not pay the supplemental assessment.

Properties asserted that the bylaws provision was an effort to collect a debt and that its enforcement violated the automatic stay imposed by §362 of the Bankruptcy Code. This court ultimately agreed and found that FOA violated the automatic stay by cancelling the 2010 annual meeting.[11] *Gordon Properties, LLC v. First Owners' Association of Forty Six Hundred Condominium, Inc., (In re Gordon Properties, LLC),* 460 B.R. 681, 687-689 (Bankr.E.D.Va. 2011). The meeting was cancelled by the Board of Directors on the advice of Robert Diamond and Michael S. Dingman, both of Reed Smith, shortly before it was scheduled to be held. As a remedy, this court established procedures for the 2011 annual meeting to assure that Gordon Properties would be able to vote and that the election would be fair and transparent. The court sanctioned FOA for its contempt but gave it an opportunity to purge its contempt, which it did. Jennifer L. Sarvadi of LeClair Ryan represented FOA in this matter. Mr. Dingman was listed as counsel of record on the court's docket and appeared at some hearings and assisted in the litigation as general condominium counsel.

The membership of the Board of Directors changed significantly as a result of the election for directors at the October 2011 annual meeting. Most of the directors on the old Board were not reelected. Gordon Properties was successful in electing three members to the Board.[12]

The second major piece of litigation was Gordon Properties' objection to FOA's proof of claim. This court followed the state court as to the method of allocating assessments. After

---

[11]The last annual meeting held before the October 2010 annual meeting was held in October 2006.

[12]Initially, the court found that four Gordon Properties-affiliated candidates were elected. At a later hearing the court thought it heard a different basis for a ruling and asked for further briefing on the issue. FOA successfully developed the revised argument that an entity was limited to designating only one individual to represent it on a Board of Directors where the bylaws required directors to be members of the condominium association. The court initially understood the argument to be founded on the 2009 resolution of the Board of Directors that limited related entities and individuals to one seat on the Board and understood the reprised argument to be based on the bylaws and general parliamentary law. Reed Smith drafted the 2009 resolution and advised the Board during its consideration. Gordon Properties was able to seat three affiliated members on the Board because in addition to the 39 units owned by Gordon Properties, Brian Sells and Gordon Residential Holdings each owned one unit.

determining the method by which assessments should be calculated and that FOA's proof of claim did not use that method, the presumption of the correctness of the amount claimed in the proof of claim was overcome and FOA bore the burden of proving the correct amount. Fed.R.Bankr.P. 3001(f). It failed to present sufficient evidence from which that could be determined and the court disallowed the proof of claim. Reed Smith represented FOA both in the state court litigation in which the Circuit Court established the method for allocating assessments and in this court in the objection to FOA's proof of claim. *Gordon Properties, LLC v. First Owners' Association of Forty Six Hundred Condominium, Inc., (In re Gordon Properties, LLC),* 2012 WL 3644788 (Bankr.E.D.Va. August 23, 2012).

There were other matters. One was a motion in this court to substantively consolidate the two bankruptcy cases. The prospects of FOA collecting its $436,792 judgment against CSI were, at best, dim. The effect of substantive consolidation would require Gordon Properties to pay the CSI judgment in full. This court ruled against FOA but was reversed by the District Court. The matter is now pending on remand. The matter was handled by Reed Smith in this court and on appeal.

FOA filed an additional suit in state court in light of the then-upcoming 2011 board election seeking to adjudicate the issue of the number of seats that related entities could hold on the Board of Directors at one time as established by the Board of Director's 2009 resolution. The case was removed to this court and remanded. It was then sent to arbitration where it is now pending.

All matters in the bankruptcy court except the substantive consolidation motion are now on appeal to the District Court. In 2011 the District Court ordered the parties to mediation. The mediation did not result in a settlement.

**Reed Smith's Present Representation**

The second portion of Reed Smith's complaint sets out the basis for the present suit. Complaint at ¶¶44-62. The allegations are principally of actions taken by the boards elected in October 2011 and October 2012. The gist of this portion of the complaint concerns the Board's handling of the Special Litigation Committee. After the 2011 annual meeting, the Board appointed a three-person Special Litigation Committee two of whom, Abdon Alexandre Zoghaib and Betty Gilliam, are plaintiffs. Mr. Zoghaib was a member of the Board of Directors. None was affiliated with Gordon Properties. The 2011 Board also terminated Reed Smith as counsel on June 19, 2012. Motion of Reed Smith LLP for Leave to Withdraw as Counsel for First Owners' Association of Forty Six Hundred Condominium, Inc. at ¶3. The Board did not terminate LeClair Ryan at that time. The Special Litigation Committee retained John Donelan as its counsel and rehired Reed Smith to handle the matters on appeal. The Special Litigation Committee was not successful in bringing the matters to a conclusion prior to the October 2012 annual meeting.

After the October 2012 annual meeting, the new Board reconstituted the Special Litigation Committee. Mr. Zoghaib and Ms. Gilliam were replaced with two newly elected board members, Maratina Hernandez and William Reichenback, neither of whom is affiliated with Gordon Properties.[13] Reed Smith's complaint challenges the propriety of this change. The complaint seeks to reinstate the Special Litigation Committee as it was before the October 2012 election and to

---

[13] The complaint describes Ms. Hernandez and Mr. Reichenback as "loyal" to Gordon Properties. Complaint at ¶¶49, 51, 60 and 61. There are no allegations that they are members, officers, directors or employees of Gordon Properties or CSI or that they are related to the four members of Gordon Properties, only that they voted with the three Gordon Properties-affiliated directors.

prohibit the three Gordon Properties-affiliated members from voting on any settlement or other issue involving Gordon Properties or CSI.[14]

## Mediation and Pending Settlement

This court requested the Hon. Kevin R. Huennekens mediate the matters. The mediation was successful. The 2012 Special Litigation Committee on behalf of FOA reached an agreement with Gordon Properties which was approved by the Board of Directors by a 6 to 0 vote, with one abstention. A motion to approve the settlement was filed with the court on January 28, 2012. Approval of the proposed settlement is scheduled for a hearing on March 21, 2013.

## Relief Requested in the Complaint

Count I seeks declaratory relief. There are eight specific forms of relief requested. The first seeks to declare that the election of the three Gordon Properties-affiliated members of the Board was invalid.[15] This very matter was litigated in this court. The three Gordon Properties-affiliated

---

[14] The complaint also challenged the propriety of temporarily hiring CSI. Complaint at ¶57. On October 12, 2012, FOA, represented by Ms. Sarvadi of LeClair Ryan, filed a consent motion to approve the engagement of Joe Riviere of CSI as interim manager on the same terms as the prior manager. As a part of the order determining the outcome of the October 2011 election, this court prohibited the new Board from hiring CSI without further authority from the court. The consent motion was granted in open court after an explanation of the circumstances. At the hearing on the disqualification motion, Reed Smith represented that it would withdraw this prayer for relief.

[15] The Complaint states:

WHEREFORE, the [eleven] Unit Owners request that this Court enter a Declaratory Judgment and injunction in its favor and against FOA, [and the three Gordon Properties-affiliated directors] declaring that:

A.   [The three Gordon Properties-affiliated director's] election to the Board it invalid."

Complaint at 19.

directors were elected at the 2011 annual meeting which was held under the supervision of this court and in which various election contests were resolved. Ms. Sarvadi of LeClair Ryan principally handled the litigation in court, however, Reed Smith was general counsel to FOA and assisted her in the case.[16] The central issue in that case was whether enforcement of the bylaws provision prohibiting delinquent unit owners from voting violated the automatic stay. This issue was litigated in both the first injunction action in which Reed Smith represented FOA as trial counsel and again in the second injunction suit in which LeClair Ryan was principal trial counsel.[17] Another issue involved in the election was the number of seats on the Board of Directors related entities and individuals could hold. This involved a resolution was passed by the Board of Directors on March 26, 2009 limiting the number to one seat. Reed Smith advised the Board on this matter and wrote the resolution.[18] Complaint at ¶¶38-45. The second injunction suit found FOA to have violated the automatic stay because it cancelled the 2010 annual meeting. The Board cancelled the annual meeting on the advice of Reed Smith.

---

[16]Exhibit 1 in the disqualification hearing shows the close cooperation between Ms. Sarvadi of LeClair Ryan and Mr. Diamond and Mr. Dingman of Reed Smith in the FOA matters, including the second injunction suit. Exhibit 1 is Reed Smith's bill to FOA dated June 22, 2012, apparently for all or most of May 2012. It shows that Mr. Dingman worked on FOA matters on 22 days in May – on every work day from May 1 to May 25, 2012, plus two Saturdays and Memorial Day – for a total of 65.90 hours. There are 22 daily time entries. Thirteen contain telephone conferences with Ms. Sarvadi. Mr. Diamond had 11 daily time entries of which 4 include telephone conferences with Ms. Sarvadi and one with Ryan C. Day of LeClair Ryan who assisted Ms. Sarvadi.

[17]Exhibit 1 which concerned only the second injunction action contains seven references in the time records to research, writing or discussion of the enforceability of FOA's bylaws provision. *See* Entries for Mr. Diamond on 5/28/2012; Mr. Dingman on 5/8/2012 and 5/10/2012; Christopher A. Lynch on 5/8/2012 and 5/10/2012; and Helenanne Connolly on 5/24/2012 and 5/25/2012.

[18]The Complaint states that this court "subsequently ruled that the Resolution was enforceable." Complaint at ¶45. That statement misunderstands this court's order of July 23, 2012 in Case No. 11-1020 (Docket Entry 239). The ruling was based on the condominium documents, not the 2009 policy resolution.

Reed Smith stated at the hearing on the disqualification motion that it would withdraw this prayer for relief.[19] To date, no pleading seeking to accomplish this has been filed. Notwithstanding the proffered withdrawal of the relief requested, nothing else in the complaint would change. The allegations would not change. The genesis of the disputes would not change. While the relief requested may a factor in determining whether the matters are substantially related, the relief requested flows from the facts of the case. Merely changing the relief requested does not change the nature of the matters.

Three prayers for relief challenge the composition and authority of the Special Litigation Committee. The complaint seeks to invalidate the change in the membership of the Committee. The Committee hired John Donelan who was not previously involved in any of the matters and, with his assistance, negotiated the settlement now before the court. The effect of the relief requested would be to invalidate the Committee's efforts and scuttle the settlement agreement.

The last three prayers for relief relate to the three Gordon Properties-affiliated directors. The complaint seeks to invalidate actions that they participated in and to prohibit them from voting on matters affecting Gordon Properties or CSI. The effect of this relief would be to hinder and perhaps prevent the proposed settlement from being approved by the court.

Count II seeks damages from the three Gordon Properties-affiliated directors for alleged breaches of their fiduciary duties.

---

[19] Reed Smith's representation that it would withdraw the two prayers for relief is troubling from the new client's perspective. The clients authorized the complaint. The question is whether by removing these two prayers for relief they are receiving the full representation to which they are entitled. "The problem implicated by successive representation is the potential for . . . the failure to use information favorable to the present client in order to protect the confidentiality of the former client." *Tessier v. Plastic Surgery Specialists, Inc.,* 731 F.Supp. 724, 728 (E.D.Va. 1990).

### **Relationship Between the Prior and Pending Representation**

This case is substantially related to the prior cases in which Reed Smith represented FOA against Gordon Properties and its representation of FOA as general condominium counsel. The facts underlying the representations are substantially the same. While it is true that some of the allegations arose after Reed Smith was terminated by FOA, they are inextricably intertwined with the facts that arose and existed during Reed Smith's prior representation. The parties are essentially the same. At least four of the eleven unit owners who are the present plaintiffs were previously on the Board of Directors when Reed Smith represented FOA. Some of the prayers for relief overlap the relief sought in prior representation. Others would frustrate FOA's attempt to resolve the two underlying disputes.

The most important factor is that this suit seeks to prevent what Reed Smith was hired by FOA accomplish: to collect money from CSI and to collect a supplemental assessment from Gordon Properties. These matters may be resolved by litigation or settlement, or a combination of both. Reed Smith had not achieved a resolution when it was discharged. FOA's new Board with new counsel did. Reed Smith represents eleven unit owners who want to prevent the proposed settlement and Reed Smith presents a way to achieve this. But the matters FOA seeks to settle and the eleven unit owners seek to prevent being settled are the same that Reed Smith was hired to resolve: to collect money from CSI and to collect an additional assessment from Gordon Properties. The prior representation and the current representation are substantially related matters in which Reed Smith's current clients' interest – the eleven unit owners' interests – are materially adverse to the interests of Reed Smith's former client, FOA.

The purpose of this suit is to hinder, delay or prevent the current Board of Directors from settling the disputes between FOA and Gordon Properties. The plaintiffs are unhappy with the proposed settlement. Without knowing the full terms of the settlement – the settlement had not been finalized at that time the complaint was filed, the allegations in the complaint being "upon information and belief" – the plaintiffs assert that the proposed settlement would, "if approved" cause:

> FOA to release its right to collect the CSI Judgment and Assessment and reduce the amount FOA can assess the units owned by Sells, Gordon Properties, and Gordon Residential. These terms are extremely unfavorable to FOA.

Complaint at ¶60. Reed Smith restates this in its opposition to the disqualification motion. It asserts that the various actions of the three Gordon Properties-affiliated directors would "force FOA to agree to an unfavorable settlement agreement." Opposition to Motion to Disqualify Reed Smith LLP at 6. Later in its opposition to the disqualification motion it states:

> Faced with the foregoing facts, Plaintiffs filed an action in the Alexandria Circuit Court ("State Court Action") that poses questions of corporate and board governance, and which asks the State Court to declare that the actions of [the three Gordon Properties-affiliated directors] in voting on the appointment of the second litigation committee and the rehiring of CSI were contrary to state law and ultra vires. The State Court Action also seeks a declaration that [the three Gordon Properties-affiliated directors] cannot properly vote on future matters that come before the FOA Board that affect Gordon Properties and/or CSI. In essence, Plaintiffs seek to set aside [the three Gordon Properties-affiliated directors'] actions that violate the fiduciary duties they owe to FOA as members of its Board.

Opposition at 7.

The effort to prevent the settlement is further illustrated by Mr. Dingman's argument after the court made its oral ruling. He requested an immediate stay pending appeal of the ruling on the disqualification motion. The path that counsel sought is shown in the colloquy that followed.

16

Reduced to its basics, he wanted a stay pending appeal to the District Court; a reversal in the District Court; a remand to the Bankruptcy Court; a remand of the removed case from the Bankruptcy Court to the Circuit Court; and a determination by the Circuit Court that the three Gordon Properties-affiliated directors had acted improperly and were prohibited from participating as members of FOA's Board of Directors in any settlement with Gordon Properties. With that ruling, he would return to this court and prevent the settlement of the very disputes Reed Smith was hired to resolve. When the court pointed out that this would not likely be accomplished before the settlement motion was heard, he acknowledged that he also wanted to stay the hearing on the settlement motion until this complicated legal maneuvering could be completed.

The substantial relationship of the two matters is further shown by the ability of the plaintiffs to raise all of the matters referred to in the complaint at the settlement hearing. All the issues go to the propriety of the settlement and to the legitimacy and authority of the Board of Directors. Resolution of all of them is necessary for approval of the settlement. This is true even when the question of authority is directed to the non-debtor counterparty to an agreement. The court cannot approve an agreement or a settlement unless all parties have the authority to enter into it and have properly exercised that authority. The court frequently makes determinations concerning a non-debtor counterparty. For example, the court determines whether a purchaser is a good faith purchaser under §363(m) of the Bankruptcy Code. The court cannot approve an illusory agreement, one that would not effectively bind the parties. These types of challenges are not generally raised because the consent and authority of the parties to a proposed settlement is generally readily apparent. But, when raised, they are a necessary part of the Rule 9019 settlement process.

The purpose of this suit is most succinctly stated in the plaintiff's eighth prayer for relief, that the three Gordon Properties-affiliated directors be "enjoined from voting or taking any action on any matters that involve any settlement of the claims arising out of or relating to Gordon Properties, CSI or Gordon Residential." Complaint at 20. It is this purpose that Rule 1.9 prohibits. The very confidential information that Reed Smith obtained when it sought to resolve these very matters may now be used to prevent resolution of them.

### Other Arguments

Reed Smith raises other arguments. It asserts that this court has no jurisdiction to hear the disqualification motion because the complaint was improperly removed to the bankruptcy court. The short answer is simply that the case is pending in this court whether it has jurisdiction or not. Every court has jurisdiction to determine whether it has jurisdiction and this court will consider that matter. However, before it can consider that matter, it must be determined who may speak for the eleven unit owners, that is, who may represent them. That is the issue addressed by the disqualification motion. Ruling on it is a necessary first step to determining whether this court has jurisdiction.[20]

Reed Smith also asserts that the remand motion should be considered before the disqualification motion. But once again, the court must first decide who can represent and speak for

---

[20]Reed Smith' jurisdiction argument is, essentially, that Lindsay Wilson, a defendant in this case, improperly removed the case. It was improper because only a party in the bankruptcy case may remove a case under 28 U.S.C. §1452. Ms. Wilson, it asserts, is not a party in the bankruptcy case and, therefore, cannot remove this case to the bankruptcy court. *But see, Creasy v. Coleman Furniture Corp.,* 763 F.2d 656, 660 (4th Cir. 1985) in which in comparing 28 U.S.C. §1452 to §1441, the Court of Appeals held that unlike §1441 where all defendants in the removed action were required to consent to the removal of an action to the District Court, "[u]nder the bankruptcy removal statute, however, any one party has the right to remove the state court action without the consent of the other parties" indicating that the term "party" in §§1441 and 1452 refers to parties to the removed action.

the eleven unit owners before they can be heard. If Reed Smith is disqualified, it is disqualified from the beginning and can argue nothing in the case.

## Conclusion

Reed Smith changed sides.[21]  It was hired to resolve two matters for FOA. FOA – albeit under new leadership – resolved them. Reed Smith now seeks on behalf of new clients, several of whom previously sat on the Board and the Special Litigation Committee – to prevent FOA from settling the very matters it was originally hired to resolve. Reed Smith may have a new theory, but it is the same matter. FOA's motion to disqualify Reed Smith will be granted.

Alexandria, Virginia
February 25, 2013

                                              /s/ Robert G. Mayer
                                              Robert G. Mayer
                                              United States Bankruptcy Judge

18310

---

[21] Comment 2 to Rule 1.9 states that, "The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question."

Copies by ECF to:

Michael S. Dingman
Jeremy Brian Root
Donald F. King
Philip J. Harvey

Copies by mail to:

Howard Sobol
4600 Duke Street, #903
Alexandria, VA 22304

Dewanda F Cuadros
4600 Duke Street, Unit #910
Alexandria, VA 22304

F. J. Pepper
4600 Duke Street, #932
Alexandria, VA 22304

Connie King
4574 Shetland Green Road
Alexandria, VA 22312

Steven Greenberg
4600 Duke Street, Unit #927
Alexandria, VA 22304

Marietta Jones
4600 Duke Street, Unit #1505
Alexandria, VA 22304

Elizabeth Moore
4600 Duke Street, Unit #1510
Alexandria, VA 22304

Stephen Langone
4600 Duke Street, Unit #629
Alexandria, VA 22304

Betty Gilliam
4600 Duke Street, Unit #619
Alexandria, VA 22304

Evelyn Cantrell
4600 Duke Street, Unit #1632
Alexandria, VA 22304

Abdon Zoghaib
2324 Archdale Road
Reston, VA 20191-1602