**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| In re: | |
| GORDON PROPERTIES, LLC, and CONDOMINIUM SERVICES, INC. | Case No. 09-18086-RGM (Jointly Administered) (Chapter 11) |
| Debtors. | |
| HOWARD SOBEL, *et al*, | |
| Plaintiffs, | |
| vs. | Adv. Proc. No. 12-1562 |
| BRYAN SELLS, *et al*, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO SUBSTITUTE COUNSEL**

Three of the four owners of Gordon Properties, LLC, are defendants in this case. Two of the owners ask that their counsel be permitted to withdraw and that counsel for the debtor be permitted to represent them.[1] The owners lent the debtor $1.7 million during the course of this bankruptcy.[2] Their ownership interests and their status as creditors are interests adverse to the estate which would disqualify debtor's counsel from further representation of the debtor. 11 U.S.C. §327(a). The

---

[1] Debtor's counsel made an appearance for the third owner, Lindsay Wilson, who removed this case from the Circuit Court for the City of Alexandria, Virginia, to this court. Blankenship & Keith PC made an appearance for the other two owners, Bryan Sells and Elizabeth Greenwell.

[2] *See In re Gordon Properties, LLC,* United States Bankruptcy Court for the Eastern District of Virginia, Case No. 09-18086-RGM, Order Granting Motion for Authority to Incur Subordinated Secured Debt (Docket Entry 200) ($500,000); Order Granting Motion for Authority to Incur Subordinated Secured Debt (Docket Entry 387) ($700,000); and Order Granting Motion for Authority to Incur Subordinated Secured Debt (Docket Entry 552) ($500,000).

motion will be denied and debtor's counsel's appearance for the third owner will be stricken.

The three owners have the right to retain counsel of their choice, but the range of their choice is affected by counsel's other representations. In this instance, counsel of their choice is already representing the debtor. An attorney must satisfy the requirements of 11 U.S.C. §327(a) to be employed by a chapter 11 debtor and must continue to satisfy them in order to remain employed by the debtor. There are two essential elements. Counsel may not "hold or represent an interest adverse to the estate" and must be a disinterested person as defined in 11 U.S.C. §101(14). Complications in satisfying these requirements arise when debtor's counsel seeks to simultaneously represent the debtor and either the owners or creditors of the debtor. Before the court can allow Mr. King to substitute himself for Blankenship & Keith, the court must determine whether Mr. King can continue to represent the debtor if he also represents the three owner-creditors.

The Court of Appeals for the Fourth Circuit addressed the employment of professionals in *Harold & Williams Dev. Co. v. United States Trustee (In re Harold & Williams Dev. Co.),* 977 F.2d 906 (4th Cir. 1992). The question presented was whether one individual could be employed by a chapter 11 debtor in possession as both its attorney and its accountant. It held that there was no *per se* prohibition and remanded the case so that the bankruptcy court could exercise its discretion in determining whether to approve the dual employment. The Court stated:

> In enacting the Bankruptcy Code, Congress entrusted the power to approve the appointment of professionals to work on behalf of a bankruptcy estate to the discretion of the bankruptcy courts. . . .
>
> Although the Code vests in the bankruptcy trustee the immediate power to select candidates for employment by the bankruptcy estate, it gives broad discretion to the bankruptcy court over the appointment of professionals to work on behalf of the trustee and the estate, in part by empowering the court to approve candidates so selected. . . .
>
> Even so, that discretion is carefully circumscribed. Under the terms of

> §327(a), the bankruptcy court may only approve the appointment of a "disinterested person," *cf.* 11 U.S.C. § 101(14) (defining "disinterested"), and may not approve the appointment of a professional who holds or represents "an interest adverse to the estate." Additionally, the bankruptcy court cannot approve a trustee's appointment of "a person that has served as an examiner in the case," §327(f), and may only approve the employment of a professional who has represented a creditor of the estate if that person no longer represents the creditor in connection with the bankruptcy case, §327(c). These are congressionally established per se rules that a bankruptcy court must apply in exercising its approval power over the appointment of professionals.

*In re Harold & Williams Dev. Co.,* 977 F.2d at 909-910 (citations omitted).

The Court of Appeal continued its analysis of §327(a) by noting that while Congress had established certain *per se* rules prohibiting appointment of professionals for a debtor, "courts must take care not to fashion *absolute* prohibitions beyond those legislatively mandated without some measure of assurance that the purposes of the Bankruptcy Code *always* will be served thereby." *Id.* at 910. It concluded:

> Thus, once the trustee meets the burden of demonstrating that an applicant for professional employment is qualified under §327, *see* Bankr.Rule 2014(a), the discretion of the bankruptcy court must be exercised in a way that it believes best serves the objectives of the bankruptcy system. Among the ultimate considerations for the bankruptcy courts in making these decisions must be the protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding.

*Id.* at 910 (citation omitted). The Court remanded the case to the bankruptcy court to exercise its discretion with respect to the proposed employment. In short, the proposed professional must first satisfy the adverse interest and the disinterested person tests. If those tests cannot be satisfied, the analysis is complete and the employment must be denied. If the tests are satisfied, then the court must exercise its discretion in deciding whether to grant or deny the application to employ. *See In re Pinebrook, LLC,* 441 B.R. 67 (Bankr.E.D.Va. 2009); *In re Palumbo Family Ltd Partnership,* 182 B.R. 447, 466 (Bankr.E.D.Va. 1995).

This case does not involve the employment of counsel by a chapter 11 debtor, but, instead, the employment of the debtor's counsel by non-debtors in other litigation. The employment, though, is directly related to the bankruptcy case. Employment affects the ability of Mr. King and his law firm to continue to represent the debtor.[3] The other litigation affects a major matter in the bankruptcy case – the approval of a compromise between the debtor and FOA which is presently before the court. Thus, in determining whether Mr. King may represent the non-debtor owner-creditors, the court must determine whether he could continue to represent the debtor if he simultaneously represents the three non-debtor owner-creditors.

The simultaneous representation of the debtor and the debtor's owners in this case violates the adverse interest test in §327(a). It is not the prospective clients' ownership interest in the debtor *per se* that is the disqualifying factor, but the combination of being both owners and creditors of the debtor. There are four members of the debtor limited liability company.[4] They control the debtor. This always presents a potential conflict of interests, a situation where the interests of the owners may diverge from the interest of the debtor. But, the possibility that this may occur is not determinative. The analysis requires an evaluation of the facts and circumstances of each case. *In*

---

[3] The case has been pending for more than 44 months. During that time, Mr. King represented the debtor in every major issue before the court, negotiated a settlement agreement with FOA and is prepared to present the proposed settlement – which has not been universally well received by the members of FOA – to the court in what may be a contentious approval hearing. Substitution of a new lawyer or a new law firm on behalf of the debtor at this time would be detrimental to the bankruptcy estate, the creditors and the parties in interest. It follows that if Mr. King would be disqualified from further representation of the debtor, he cannot be permitted to substitute in as counsel for the three owners in the other litigation.

This conclusion is reenforced by the reason given by the three owner-creditors. They simply want to reduce their expenses by consolidating their defense in this case in a single law firm so that they will avoid duplication of effort and fees. That is a reasonable consideration, but that can also be achieved by having Blankenship & Keith which represents two of the owners represent all three of them.

[4] The fourth member is under a disability. Her affairs are managed by co-personal representatives, one of whom is her sister who is also one of the other three owners of the debtor.

4

*re Palumbo Family Ltd. Partnership,* 182 B.R. at 466 n.29 (characterizing the difference between a "potential" and an "actual" conflict as "more semantic than substantive").

The bankruptcy case was commenced on October 2, 2009, when Gordon Properties filed a voluntary petition in bankruptcy under chapter 11 of the United States Bankruptcy Code. There has been extensive litigation in this court between the debtor and First Owners' Association of Forty Six Hundred Condominium ("FOA"). There have been several suits in this court and state court and an arbitration proceeding. As a result of the extensive litigation in this court, this court disallowed FOA's proof of claim for $315,673.36 and found that FOA violated the automatic stay. As a remedy for the stay violation, the court supervised the regularly scheduled 2011 election of the board of directors of FOA and awarded the debtor its attorney's fees of $277,063.17.[5] The incumbent board was substantially replaced and three owners of Gordon Properties were elected to the seven-person board of directors in 2011. On September 13, 2012, this court ordered the debtor and FOA to mediate their claims. Although the parties did not finalize an agreement until January 2013, by November 2012, it appeared that they were close to a settlement. On November 29, 2012, eleven members of FOA, including several former directors, filed the complaint in this adversary proceeding in state court. Lindsay Wilson, one of the defendants, removed it to this court.

The eleven members alleged that Gordon Properties filed this bankruptcy for an improper purpose and that it used improper means to take over the board of directors. They sought declaratory and injunctive relief, essentially to invalidate the election of the three Gordon Properties-affiliated directors to the board of directors and to prevent the board from concluding a settlement agreement.

---

[5]Directors of FOA were elected at the annual meeting held in October 2006. None were affiliated with Gordon Properties. Directors serve for two-year terms, or until their successor is elected, but no elections were held until October 2012. The 2006 board continued to serve until June 2012 when the contested 2011 election was resolved.

5

It also sought damages against the three Gordon Properties-affiliated directors for breach of fiduciary duties as directors.

The debtor is a limited liability company and the owners have full and direct management control over it. At the same time, they are the debtor's largest creditor. The loans are secured by the debtor's real estate. The debtor has not had sufficient cash flow to pay all of its expenses, particularly its legal fees, without the substantial loans from the owners. The litigation in this bankruptcy has been very expensive. There are indications that the combined attorney's fees of both FOA and the debtor exceed $2 million. For the debtor's part, it was authorized to borrow $1.7 million from its owners. Part of this was undoubtedly for payment of attorney's fees. Another portion was used to fund its wholly-owned subsidiary, Condominium Services, Inc., ("CSI") which is also in bankruptcy in this court. The funding was made as an equity contribution from Gordon Properties to CSI. FOA holds a judgment against CSI for $448,446.44.

The Monthly Operating Report for March 2013, the most recent filed with the court, illustrates the issues. Three law firms have been employed by the debtor. Fee applications totaling $1,046,142 have been approved, however, the March Monthly Operating Report states that only $721,396 of those fees have been paid. At the same time, the accounts payable are stated as $40,012.

The first Monthly Operating Report, for October 2009, reflects an investment in CSI of $726,066. The most recent Monthly Operating Report shows an investment in CSI of $1,024,266, an increase of almost $300,000.[6] This is consistent with the debtor's practice of funding CSI's monthly cash shortfall. CSI is a wholly-owned subsidiary of the debtor and is also a debtor before

---

[6]The investment in CSI should not be taken as the fair market value of CSI.

6

this court.[7]  There is a significant history between CSI and FOA.  CSI was FOA's managing agent for most of the years since the late 1970s.  It was terminated by FOA in 2006 and a judgment was later entered against it in favor of FOA for $453,533.12.  CSI appealed the judgment to the Supreme Court of Virginia without success.  Several months after three of the owners of Gordon Properties were elected to FOA's board of directors, FOA and CSI requested that CSI be appointed interim manager for FOA while FOA sought a permanent managing agent.[8]  The relief was granted.  Several months later, FOA sought to employ CSI as its permanent managing agent, a motion that is pending before the court.

CSI's March 2013 Monthly Operating Report contains an Income and Expense Statement which shows the current period and year-to-date income and expenses and the yearly budget.  The yearly budget shows management fees of about $340,000 of which about $180,000 is from third-party condominiums and homeowner associations.[9]  FOA's annual management fee is shown as $70,000, but the proposed contract is for $80,000.  Gordon Properties pays CSI $80,000 to manage its real estate.  There is additional income from other fees and costs charged to the associations.  The total projected annual income is $514,562.  FOA accounts for abut 23% of the management fees.  The third-party condominiums and homeowner associations account for about 54% with the debtor accounting for the other 23%.  This budget is at about the break-even mark.  It appears that with the FOA contract, CSI would not have a cashflow loss and the debtor would not have to continue funding the deficit.

---

[7] The two cases were administratively consolidated.  A motion to substantively consolidate them is pending.

[8] The court had prohibited any contract between FOA and CSI in resolving the election disputes to the FOA board of directors without court approval.

[9] CSI manages about fifteen condominiums and homeowner associations other than FOA and the debtor.

The relationships between Mr. King's prospective clients, Lindsay Wilson, Bryan Sells and Elizabeth Greenwell, and the debtor place them as individuals with interests adverse to the debtor. They are directors of FOA, the debtor's single largest non-insider creditor. The three owners have been authorized to loan the debtor $1.7 million. The March 2013 Balance Sheet shows an outstanding loan from the owners of $1,171,842.00. It also shows accrued but unpaid interest on the credit line to "Bryan" and "Julia" of $96,440.92 and $97,039.21, respectively, presumably meaning Bryan Sells. It is clear that the three owners, as creditors, control the debtor. They can fund the debtor to the extend they deem appropriate, without regard to whether funding or withholding funding is in the best interests of the debtor. The debtor has borrowed more money from the owners than FOA, unsuccessfully, claimed in its proof of claim and FOA's judgment against CSI combined. The debtor fought a long, hard and expensive fight over voting rights – a collateral issue – and when it was successful, elected the three individual owners to the FOA board of directors. That board chose the debtor's subsidiary, CSI, to manage the affairs of FOA. The combination of all of these factors create an interest adverse to the debtor and preclude an attorney from representing both the owners and the debtor.

Even if these factors did not create an adverse interest, the court would exercise its discretion to disapprove the employment because of the manner in which the parties have conducted the bankruptcy case. The court is not willing to lay the blame for the manner in which this case has been conducted entirely at the feet of one side. It is common that opposing sides are unhappy with each other and antagonistic. Here, though, everything gives the appearance that the interaction of the two sides was unusually toxic. However, the debtor's conduct after the old FOA board of directors was voted out of office and their original counsel dismissed, raises the specter of overreaching. A contract was proposed between CSI and FOA. A settlement was reached with FOA. In both

8

instances it is essential that there be no overreaching. The issue must be examined and the specter dispelled. The transactions must be transparent and survive examination. Yet, the debtor objected to the appointment of an *amicus curiae* to review and comment on the settlement motion. When the *amicus* suggested that the appointment of an examiner would obviate the debtor's objections, the debtor objected to the appointment of an examiner. The debtor sought to negotiate the terms of the *amicus'* role, but the *amicus* – in a footnote to his response to the objection – properly noted that he could not agree to the restrictions. The debtor which raised the issues seeks to hobble the *amicus* or an examiner by objecting to it paying for the fees incurred.

One plaintiff in this suit sought to withdraw. The three owners had no objection, provided that they were able to reserve their right to seek fees and costs against the individual. The fees and costs to this point should be, at best, modest although in this case the court would not be surprised if they exceeded modesty. Moreover, the owners have asserted – and it appears that the FOA board on which they sit has agreed – to indemnify them for their fees as provided by FOA's bylaws. Whatever the merits of the owner's request to reserve their rights as to fees and costs, the request cannot help but be intimidating to the other ten plaintiffs whose counsel at the same hearing announced that it was likely that they, too, would seek to dismiss their complaint. The court notes that the debtor sued the prior directors in this court and again in state court.

At the same hearing, the debtor threatened to withdraw from the settlement. It, of course, cannot do so without leave of court. The holding in *In re Frye,* 216 B.R. 166 (Bankr.E.D.Va. 1997) (Bostetter, C.J.) is equally applicable here:

> It would be inequitable to allow a party to an otherwise enforceable agreement who has given the proper notice and scheduled a hearing under Rule 9019 to revoke an offer after it had been accepted merely because the court had not yet heard the motion to approve the compromise of the claim. The agreement is therefore binding on the parties pending approval by this Court.

*Id.* at 174.

The owners assert Ms. Wilson removed the state court suit to this court as a representative of the debtor and argue that the adversary proceeding is essentially against the debtor although not a party to the suit. They conclude that Mr. King, as debtor's counsel, properly made an appearance for Ms. Wilson and can also represent all three of them without jeopardizing his representation of the debtor.[10] This proposition cannot be accepted. The three owners are named individually and damages are sought against them individually. Their individual actions as directors of FOA are sought to be affected. While the suit could have a significant impact on the debtor and the settlement now before the court for approval, the defendants are the three owners individually.[11]

These circumstances raise issues that must be addressed and resolved. There may be no substance to the matters, but the integrity of the settlement process depends upon knowing that. The open, transparent and fair resolution of competing claims is one of the objectives of the bankruptcy system. In ordinary litigation, there are only two parties – maybe a few. They are able to and are responsible for protecting their own interests. In bankruptcy there is a community of creditors and parties in interest and the resolution of any of the many claims that may exist has an impact on other members of the creditor community. The bankruptcy court must be sensitive to these considerations and assure that the resolution of claims is fair and transparent to all creditors and parties in interest. In doing this, the court not only protects the creditor community but also the bankruptcy estate. Appointing counsel for the debtor or permitting counsel to continue as counsel for the debtor should

---

[10]Notice of Removal states that "Defendant, Lindsay Wilson, in her capacity as the representative of Gordon Properties, LLC, by counsel, hereby removes this case." Notice of Removal (Docket Entry 1) at 1. The Notice of Removal is signed by Gordon Properties. Gordon Properties is not a party to the suit although its interests are certainly sought to be affected. Gordon Properties, not being a party to the state court case, cannot remove it. 11 U.S.C. §1452(a). The court has treated the Notice of Removal as Ms. Wagner's act, not Gordon Properties.

[11]FOA is also a defendant.

reflect these concerns. *Harold & Williams Dev. Co. v. United States Trustee*, 977 F.2d at 910.

One critical aspect of small corporate cases is that the owners understand the difference between their personal interests and the interests of the debtor. In this case, that can best be achieved by separate counsel. It is true that the owners will make the decisions for the debtor in their capacity as managers of the limited liability company, but requiring separate counsel enables each counsel to give candid advice in light of the client he represents and not be concerned or affected by the competing roles the owners have in the case. In the end, if the owners cannot distinguish between their roles as individual owners or creditors and as managers of a debtor in possession, the appropriate remedy is the appointment of a chapter 11 trustee or conversion of the case to chapter 7.

The combination of the ownership and creditor relationship in this case creates an adverse interest that precludes the same attorney from representing both the owner-creditors and the debtor. In addition, it is not appropriate for the same attorney to represent both the owners and the debtor in this case and the court will exercise its discretion to deny the simultaneous representation. The bankruptcy estate and the creditors are better served when the debtor and the owners are separately represented.

Alexandria, Virginia
May 17, 2013

                                               /s/Robert G. Mayer
                                               Robert G. Mayer
                                               United States Bankruptcy Judge

| | |
|---|---|
| Copy electronically to: | Copy mailed to: |
| Donald F. King<br>Richard G. Hall<br>Stephen E. Leach<br>Jeremy B. Root<br>Philip J. Harvey | Evelyn Cantrell<br>4600 Duke Street, Unit #1632<br>Alexandria, Virginia 22304<br><br>Stephen Langone<br>4600 Duke Street, Unit #927<br>Alexandria, Virginia 22304<br><br>Joseph Guzinski<br>United States Trustee<br>115 South Union Street<br>Alexandria, Virginia 22314 |

18558